2002 UT 16

**Mary WHEELER and Petra Srbova, Plaintiffs and Appellants,**

v.

**Mark R. McPHERSON and Kane County, Defendants and Appellees.**

No. 20000795.

Supreme Court of Utah.

Jan. 29, 2002.

RUSSON, Associate Chief Justice:

¶ 1 Mary Wheeler and Petra Srbova appeal from an order dismissing their action in negligence against Mark R. McPherson and Kane County. The district court dismissed the action on jurisdictional grounds, finding that plaintiffs had failed to comply with the Governmental Immunity Act's notice of claim requirement, Utah Code Ann. §§ 63–30–11 to–13 (Supp.2001). We affirm.

## BACKGROUND

¶ 2 On September 27, 1998, Mark McPherson ("McPherson"), an employee of Kane County ("the .County"), was involved in a motor vehicle accident with Dale Wheeler. Riding in Mr. Wheeler's vehicle were passengers Petra Srbova and Mary Wheeler, Mr. Wheeler's wife. As a result of the accident, Mss. Srbova and Wheeler (collectively, "plaintiffs") sued McPherson and the County on September 27, 1999. Specifically, plaintiffs alleged that McPherson, while acting in his capacity as an employee and agent of the County, negligently operated his vehicle in a manner that injured Mss. Srbova and Wheeler, and thus, caused them damages in lost income, diminished earning capacity, pain and suffering, and permanent impairment and disability.

¶ 3 Prior to bringing suit, plaintiffs sought to file notice of claim with Kane County as required by the Governmental Immunity Act ("the Immunity Act" or "the Act").[1] Plaintiffs attempted to file this notice of claim by sending identical letters describing the accident and its alleged effects on plaintiffs to Kane County's three commissioners and to the County's insurance carrier, Utah Association of Counties Insurance Mutual ("UACIM"). On February 12, 1999, Holly H. Ramsay, an employee of the Kane County clerk's office, signed for and acknowledged receipt of plaintiffs' letters on behalf of the commissioners. Thereafter, UACIM also received the copy of plaintiffs' letter addressed to it.

Ray Phillips Ivie, David N. Mortensen, Jeffery C. Peatross, Provo, for plaintiffs.

Peter Stirba, Salt Lake City, for defendants.

---

1. The Governmental Immunity Act requires that where the state or its subdivisions may be sued, plaintiffs must provide a formal "notice of claim" to the appropriate government official before bringing their action. Utah Code Ann. §§ 63–30–11 to –13; *see also infra* ¶ 10.

¶4 On March 8, 1999, Linette B. Hutton, who had been retained as counsel by UA-CIM, wrote plaintiffs concerning their pending claims. Ms. Hutton's letter recognized receipt of the notice of claim and then requested that plaintiffs provide her with medical "records, or, in the alternative, ... the names of [plaintiffs'] health care providers ... [and signed] medical record[ ]" release forms. In regard to the notice of claim, the letter further provided:

> Please be advised that this [letter] does not constitute an acceptance or denial of the "Notice of Claim," nor does it confirm or verify the sufficiency of the claimants' notice of claim as required by the Governmental Immunity Act, Utah Code Ann. § 63–30–1 *et seq.*

Subsequently, on March 20, 1999, the Kane County attorney also wrote plaintiffs concerning their claims. The full text of this letter read: "As you are no doubt aware, Kane County has turned the claim over to its claim adjusters, who have in turn retained Linette B. Hutton. Please direct all further communications and correspondence to Ms. Hutton. Thank you."

¶5 On March 16, 2000, the County filed a motion to dismiss plaintiffs' suit pursuant to Utah Rule of Civil Procedure 12(b)(1). In its motion, the County contended that the district court lacked jurisdiction over the suit because plaintiffs had failed to properly file notice of claim under the Governmental Immunity Act. Specifically, the County argued that plaintiffs' notice of claim was insufficient because plaintiffs had served it on the Kane County commissioners rather than on the Kane County clerk. The County stated, "Plaintiffs did file a notice of claim with the Kane County Board of Commissioners on February 11, 1999. However, this does not satisfy the Immunity Act's clear and unambiguous requirement that, in claims brought against a county, a notice of claim must be filed with the county clerk."

¶6 Plaintiffs responded to the County's motion by arguing, among other things, that their notice of claim was "satisfactory" because they had filed it with "the governing body of Kane County ... seven months [before notice of claim was] required," and that the County should be "estopped from raising the notice of claim issue" because the County attorney had impliedly accepted notice of claim on behalf of the County by "direct[ing] that all further communications and correspondence go through Ms. Hutton." In addition, plaintiffs asserted that they should be allowed to pursue additional discovery in the case pursuant to Utah Rule of Civil Procedure 56(f), because the County's motion to dismiss and plaintiffs' response thereto were supported by affidavits.

¶7 On August 10, 2000, the district court convened a hearing to consider the parties' respective arguments concerning the motion to dismiss. Shortly thereafter, on August 24, 2000, the district court entered an order granting the County's motion and dismissing plaintiffs' suit.

¶8 On appeal, plaintiffs challenge the district court's August 24, 2000, dismissal of their suit by urging this court to adopt a "substantial compliance" interpretation of the Immunity Act's notice of claim requirement, which would deem notices of claim legally sufficient under the Act in circumstances where the relevant governmental entity receives timely notice and "the claimant substantially complies with the [Act's] form and delivery requirements." Consequently, plaintiffs further contend that their notice of claim satisfies their proposed substantial compliance standard in this case because it was timely served on the Kane County commissioners and contained all information relevant to their claim. In the alternative, plaintiffs also argue that the district court erred by declining to find the County "estopped from raising ... notice of claim" as a defense because the County attorney impliedly accepted their notice of claim. Finally, plaintiffs allege that the district court erred by failing to allow additional discovery pursuant to Utah Rule of Civil Procedure 56(f). In response, the County argues that this court's precedent requires a strict compliance interpretation of the Immunity Act's notice of claim requirement; that plaintiffs failed to strictly comply with the notice of claim provision in this case; that the Kane County attorney did not impliedly accept plaintiffs' notice of claim on behalf of the County; and

that the district court properly disallowed discovery.

## STANDARD OF REVIEW

■ ¶ 9 Compliance with the Immunity Act is a prerequisite to vesting a district court with subject matter jurisdiction over claims against governmental entities. *See Thomas v. Lewis,* 2001 UT 49, ¶ 13, 26 P.3d 217; *Rushton v. Salt Lake County,* 1999 UT 36, ¶ 18, 977 P.2d 1201; *Roosendaal Constr. & Mining Corp. v. Holman,* 28 Utah 2d 396, 398, 503 P.2d 446, 448 (1972). Accordingly, a district court's dismissal of a case based on governmental immunity is a determination of law that we afford no deference. *Hall v. Utah State Dep't of Corr.,* 2001 UT 34, ¶ 11, 24 P.3d 958; *Petersen v. Bd. of Educ.,* 855 P.2d 241, 242 (Utah 1993). We review such conclusions for correctness. *Id.*

## ANALYSIS

### I. NOTICE OF CLAIM

■ ¶ 10 The Governmental Immunity Act grants the state and its political subdivisions "broad, background immunity" from injuries that result due to the exercise of a governmental function. *Hall,* 2001 UT 34 at ¶ 18, 24 P.3d 958; *see also* Utah Code Ann. § 63–30–3(1) (1997). At the same time, the Act defines narrower parameters where governmental immunity is waived and legal liability may arise. *See* Utah Code Ann. §§ 63–30–5 to–10.5. In order to sue a governmental entity under these parameters, potential plaintiffs must first provide, as a prerequisite to filing suit, formal "notice of claim" to the appropriate governmental official. The Act states:

> A claim against a political subdivision, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the governing body of the political subdivision *according to the requirements of Section 63–30–11* within one year after the claim arises....

*Id.* § 63–30–13 (emphasis added); *see also id.* § 63–30–12 (requiring notice of claim to

sue the state). In cases where a potential plaintiff intends to sue a county, section 63–30–11 provides that the "notice of claim shall be ... directed and delivered to ... the county clerk." *Id.* § 63–30–11(3)(b)(ii)(B). The case now before us presents the issue of what constitutes the appropriate standard of compliance with the Immunity Act's notice of claim requirement and, accordingly, whether plaintiffs' notice of claim satisfied this standard.

### A. Strict Compliance

■ ¶ 11 "We have consistently and uniformly held that suit may not be brought against the state or its subdivisions unless the requirements of the Governmental Immunity Act are strictly followed." *Hall,* 2001 UT 34 at ¶ 23, 24 P.3d 958; *see also Holt v. Utah State Rd. Comm'n,* 30 Utah 2d 4, 6, 511 P.2d 1286, 1288 (1973), *overruled in part on other grounds by Colman v. Utah State Land Bd.,* 795 P.2d 622, 632 (Utah 1990). Indeed, this standard of strict compliance derives naturally from both basic principles of sovereign immunity and from the text of the Immunity Act itself. As we explained in *Hall,* "[W]here the government grants statutory rights of action against itself, any conditions placed on those rights must be followed precisely." 2001 UT 34 at ¶ 23, 24 P.3d 958; *cf. Hamilton v. Salt Lake City,* 99 Utah 362, 366–67, 106 P.2d 1028, 1030 (1940); *Sweet v. Salt Lake City,* 43 Utah 306, 315, 134 P. 1167, 1171 (1913). Consequently, the Immunity Act requires that parties "shall" file a notice of claim prior to suit, Utah Code Ann. § 63–30–11(2), and failure to file notice of claim bars the action. *Id.* § 63–30–13.

¶ 12 Applying this rule of strict compliance, we have repeatedly denied recourse to parties that have even slightly diverged from the exactness required by the Immunity Act. Under previous versions of the statute, for example, we have deemed causes of action barred where a party failed to verify her notice with an oath, *Hamilton,* 99 Utah at 366–68, 106 P.2d at 1030, where the plaintiff filed notice of claim one day late, *Yearsley v. Jensen,* 798 P.2d 1127, 1128–29 (Utah 1990), and where the notice of claim was not filed with the appropriate official prior to institu-

tion of the suit in court. *Thomas E. Jeremy Estate v. Salt Lake City*, 87 Utah 370, 375, 49 P.2d 405, 407 (1935).[2] Recently, we have held that the strict compliance rule continues to apply to the Immunity Act following the legislature's 1998 amendment of the notice of claim provision, which clarified exactly to whom such notices must be delivered. In *Greene v. Utah Transit Authority*, 2001 UT 109, ¶¶ 13–14, 37 P.3d 1156, we ruled that the legislature's amendment only further bolstered the strict compliance standard and, therefore, affirmed the trial court's dismissal of a complaint where the plaintiff filed notice of claim with the Utah Transit Authority's claims adjuster rather than its president or secretary as required by the Act. We stated:

> With the 1998 amendment, the legislature has left little open to interpretation and has resolved any potential ambiguities as to whom the Notice must be delivered. This move to clarify the delivery requirements of the Immunity Act reinforces the rule of strict compliance with the statute.

*Id.* at ¶ 14. Plaintiffs' action in the case now before us arose after May 4, 1998, making the 1998 amendment applicable here. *See* Utah Code Ann. § 63–30–11. Consequently, our interpretation of the notice of claim requirement in *Greene* is dispositive of the standard of compliance required by the Immunity Act in this case.[3]

¶ 13 Therefore, in conformity with our long established jurisprudence construing the statute—and with our recent interpretation of the 1998 amendment in *Greene*—we reiterate today that the Immunity Act demands strict compliance with its requirements to allow suit against governmental entities. The notice of claim provision, particularly, neither contemplates nor allows for anything less. *See Greene*, 2001 UT 109 at ¶¶ 13–17, 37 P.3d 1156. Accordingly, we decline plaintiffs' invitation to adopt a "substantial compliance" interpretation of the Act.

### B. Plaintiffs' Compliance with the Notice of Claim Requirement

¶ 14 Having reiterated that parties claiming damages due to governmental action must strictly comply with the Immunity Act in order to bring suit, we now turn to the question of whether plaintiffs complied with the statute's notice of claim requirement in this case.

¶ 15 The 1998 amendment to the notice of claim provision applicable here "explicitly declare[s] how, what, when, and to whom a party must [file notice of claim] in order to preserve his or her right to maintain an action against a governmental entity." *Id.* at ¶ 15. Specifically, the statute provides that the notice of claim "shall be ... directed and delivered to ... the county clerk, when

---

**2.** Although our decisions in *Hamilton, Sweet,* and *Thomas E. Jeremy Estate* do not address the current version of the Immunity Act, they do construe notice of claim provisions that are substantively similar to the provision now in effect. More importantly, these cases "demonstrate that both before and since enactment of the Governmental Immunity Act, plaintiffs may sue the state and its subdivisions only by complying exactly with the statutory requirements provided to do so." *Hall*, 2001 UT 34 at n. 6, 24 P.3d 958.

**3.** We further note that plaintiffs have failed to satisfy the "substantial burden of persuasion" necessary to overturn our precedent requiring strict compliance with the Act. *State v. Menzies*, 889 P.2d 393, 398 (Utah 1994). "[P]arties seeking to have us depart from our prior case law must 'clearly convince[ ][us] that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *City of Hildale v. Cooke*, 2001 UT 56,

¶ 36, 28 P.3d 697 (quoting *Menzies*, 889 P.2d at 399). In this case, plaintiffs do not even assert that the rule of strict compliance was originally erroneous or is now obsolete due to changing conditions. Rather, plaintiffs merely assert that a "substantial compliance" standard would better ."promote justice and equity." This argument, however, must fail. There is no guarantee that allowing substantial compliance with the Immunity Act will advance "justice" at all. Indeed, allowing substantial compliance may severely overburden our already overcrowded courts, disadvantage governmental entities, and confuse potential plaintiffs and defendants alike as to what the Act requires. Moreover, given that the Immunity Act clearly explains on whom notice of claim should be served, it is really those parties who fail to follow the express provisions of the statute correctly that prevent justice, not the strict compliance rule. *See Greene*, 2001 UT 109 at ¶ 14, 37 P.3d 1156. ("Where, as here, the statute is clear, readily available, and easily accessible by counsel, there is no reason to require anything less than strict compliance.").

the claim is against a county." Utah Code Ann. § 63–30–11(3)(b).

■ ¶ 16 In this case, it is undisputed that plaintiffs failed to direct and deliver their notice of claim to the Kane County clerk. Rather, plaintiffs attempted to file notice of claim by sending letters to the Kane County commissioners and the County's insurance carrier. Despite this fact, plaintiffs assert that their notice of claim satisfies the requirements of the Immunity Act because they submitted their notices "to the governing body of Kane County" within the time frame allotted by the statute. However, as we have repeatedly stated, actual notice of a claim by a governmental entity does not absolve a party of its duty to strictly comply with the Act. *E.g., Hall,* 2001 UT 34, ¶¶ 25–26, 24 P.3d 958; *Rushton v. Salt Lake County,* 1999 UT 36, ¶ 19, 977 P.2d 1201; *Sears v. Southworth,* 563 P.2d 192, 194 (Utah 1977); *Scarborough v. Granite Sch. Dist.,* 531 P.2d 480, 482 (Utah 1975). On the contrary, "[c]ompliance with the statute is the determining issue, not actual notice." *Greene,* 37 P.3d 1156, 2001 UT 109 at ¶ 15. Consequently, because plaintiffs in this case failed to strictly comply with the Act's requirement that they direct and deliver their notice of claim to the Kane County clerk, we hold that, absent any other error below, the district court correctly dismissed plaintiffs' claims for lack of jurisdiction. *Id.* at ¶ 16; *see also* Utah Code Ann. §§ 63–30–11(3)(b), –13; Utah R. Civ. P. 12(b)(1).

## II. ESTOPPEL

■ ¶ 17 Plaintiffs next contend that, even if the Immunity Act requires strict compliance, the County should be "estopped from raising [insufficiency of] notice of claim" as a defense because the Kane County attorney impliedly accepted their notice of claim by "direct[ing] that all further communication and correspondence go through Ms. Hutton." In support of this contention, plaintiffs correctly cite *Rice v. Granite School District,* 23 Utah 2d 22, 456 P.2d 159 (1969), for the proposition that estoppel applies to jurisdictional defenses created by the Act.

¶ 18 In *Rice,* we held that, "depend[ing] upon the character of the negotiations and the circumstances surrounding the parties," governmental entities may be estopped from raising the Immunity Act as a jurisdictional defense against claims lodged by injured parties. 23 Utah 2d at 27, 456 P.2d at 163. Specifically, governmental entities are estopped from raising the Immunity Act as a defense where their statements "induce" plaintiffs into "delay[ing] filing [an] action," *Rice,* 23 Utah 2d at 28, 456 P.2d at 163, or where such statements mislead plaintiffs into filing notice of claim incorrectly. *See Shunk v. State,* 924 P.2d 879, 882 (Utah 1996).

¶ 19 Here, it is clear from the "circumstances surrounding the parties" that the County did not induce or mislead plaintiffs into failing to correct their insufficiently filed notice of claim. *Rice,* 23 Utah 2d at 27, 456 P.2d at 163. In making their estoppel argument on appeal, plaintiffs rely solely on the Kane County attorney's letter, which instructed plaintiffs to "direct all further communications and correspondence to Ms. Hutton," for the proposition that the County misled them into not refiling notice of claim with the Kane County clerk. However, the Kane County attorney's letter did not in any way accept plaintiffs' notice of claim. In fact, the letter never mentioned plaintiffs' notice of claim at all. Moreover, plaintiffs had no reason to believe that their notice of claim had been accepted by the County despite its insufficiency. Prior to the Kane County attorney's letter, plaintiffs received a letter from Ms. Hutton that expressly declared it neither "constitute[d] an acceptance or denial of the 'Notice of Claim,' nor ... confirm[ed] or verif[ied] sufficiency of the claimants' notice of claim as required by the Governmental Immunity Act." Like the County attorney's letter, this statement also cannot be construed as misleading plaintiffs into believing that their notice of claim had been accepted by the County. If anything, Ms. Hutton's letter put plaintiffs on notice that the County had not waived its Immunity Act defenses, including notice of claim. *See Shunk,* 924 P.2d at 882. Accordingly, we hold as a matter of law that the Kane County attorney's letter instructing plaintiffs to "direct all further communications ... to Ms. Hutton" does not estop the County from

raising the Immunity Act as a defense to plaintiffs' claims. This letter never even referenced plaintiffs' notice of claim, and plaintiffs had already been alerted that the County had not waived such a defense.

## III. DISCOVERY

 ¶ 20 Finally, plaintiffs argue that the district court erred by failing to allow additional discovery pursuant to Utah Rule of Civil Procedure 56(f), because the County's motion to dismiss and plaintiffs' response thereto were both supported by affidavits. This argument mistakenly assumes that a motion to dismiss for lack of subject matter jurisdiction under Utah Rule of Civil Procedure 12(b)(1) is converted to a motion for summary judgment if affidavits are attached. *Spoons v. Lewis*, 1999 UT 82, ¶ 4, 987 P.2d 36. While Utah Rule of Civil Procedure 12 does provide that motions brought pursuant to subsection (b)(6) of the rule "shall be treated as one for summary judgment [under] Rule 56," Utah R. Civ. P. 12(b), the rule "does not convert motions based on subsections (b)(1) through (5) ... into motions for summary judgment simply because they include some affirmative evidence relating to the basis for the motion." *Spoons*, 1999 UT 82 at ¶ 5, 987 P.2d 36. Indeed, the purpose underlying rule 12's conversion requirement is "to allow parties an adequate opportunity to rebut materials outside the pleadings." *Id.* at ¶ 4; *see also Bekins Bar V Ranch v. Utah Farm Prod. Credit Ass'n*, 587 P.2d 151, 152 n. 4 (Utah 1978). Likewise, Utah Rule of Civil Procedure 56(f) allows for discovery only where a party cannot "present by affidavit facts essential to justify" its position. Utah R. Civ. P. 56(f). In this case, the record reflects that plaintiffs in fact submitted an affidavit describing precisely how they had attempted to file notice of claim. Moreover, plaintiffs concede on appeal that they did not direct and deliver their notices to the Kane County clerk, but instead sent them "to ... the Kane County Board of Commissioners." Therefore, because plaintiffs admit the very facts necessary to dispose of their suit pursuant to the Immunity Act's notice of claim requirement, we rule that the district court did not err by denying plaintiffs' dis-

covery request. *See Spoons*, 1999 UT 82 at ¶¶ 4–5, 987 P.2d 36; Utah R. Civ. P. 56(f).

## CONCLUSION

¶ 21 We conclude that (1) plaintiffs failed to strictly comply with the Immunity Act's notice of claim requirement, (2) the County is not estopped from raising the Immunity Act as a defense under the conditions of this case, and (3) the district court did not err by disallowing discovery pursuant to Utah Rule of Civil Procedure 56(f). Accordingly, we affirm the district court's dismissal of plaintiffs' suit for lack of jurisdiction.

¶ 22 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON'S opinion.