2001 UT 109

**Teresa GREENE, Plaintiff and Appellant,**

v.

**UTAH TRANSIT AUTHORITY, Defendant and Appellee.**

**No. 20000664.**

Supreme Court of Utah.

Dec. 18, 2001.

Michael A. Katz, Murray, for plaintiff.

Alan L. Sullivan, Scott C. Sandberg, Salt Lake City, for defendant.

WILKINS, Justice:

¶ 1 Teresa Greene filed a complaint against the Utah Transit Authority ("UTA"). The trial court dismissed her complaint, holding that she failed to comply with the Utah Governmental Immunity Act ("Immunity Act"). We affirm.

## BACKGROUND

¶ 2 Although the trial court characterized its order as granting UTA's motion to dismiss, the order is more properly characterized as granting summary judgment. Because UTA's motion was brought, in part, under Rule 12(b)(6) of the Utah Rules of Civil Procedure, and because matters outside the pleadings were considered by the trial court, Rule 12 requires that the motion be treated as one for summary judgment and disposed of as provided in Rule 56. Utah R. Civ. P. 12(b), (c); *see also, e.g., DOIT, Inc. v. Touche, Ross & Co.,* 926 P.2d 835, 838 n. 3 (Utah 1996). When determining whether a trial court properly granted a motion for summary judgment, we review the facts in the light most favorable to the losing party

below. *Bearden v. Croft,* 2001 UT 76, ¶ 5, 31 P.3d 537. We review the facts accordingly.

¶ 3 Teresa Greene sued UTA to recover for injuries she sustained while boarding a UTA bus on September 21, 1998. Ms. Greene retained Mitchell Jensen to pursue recovery from UTA in excess of UTA's standard personal injury insurance coverage.

¶ 4 Because UTA is a governmental entity, an action against it may proceed only if allowed by the Immunity Act. The Immunity Act requires that before maintaining an action against UTA, an individual must first direct and deliver a written notice of claim ("Notice") to UTA's president or secretary of the board within one year after the claim arises. *See* Utah Code Ann. §§ 63–30–11, – 13 (Supp.2001).

¶ 5 Mr. Jensen engaged in oral and written communications with David C. Pitcher, UTA's sole claims adjuster, regarding Ms. Greene's claim. In a telephone call between Mr. Pitcher and Mr. Jensen, Mr. Pitcher directed Mr. Jensen to send all communications, including the Notice, to Mr. Pitcher. Pursuant to these instructions, Mr. Jensen delivered the Notice to Mr. Pitcher at UTA by letter dated August 6, 1999. Mr. Pitcher denied the claim in a letter dated September 24, 1999, explaining that UTA would not make a settlement offer as the Notice did not comply with the delivery requirements of the Immunity Act. By this time the one-year limitations period had expired.

¶ 6 Shortly thereafter, Ms. Greene filed a complaint to recover compensation from UTA. In response, UTA filed a motion to dismiss, alleging Ms. Greene's noncompliance with the Immunity Act's requirement that the Notice be served on the president or secretary of the board. The trial court denied the motion without prejudice to allow discovery on whether UTA had waived or was estopped from raising objections to the requirements of the Immunity Act.

¶ 7 Mr. Jensen deposed Mr. Pitcher and Kathryn Pett, UTA's general counsel and secretary. Both testified that Mr. Pitcher is not authorized by UTA's board to accept a Notice on UTA's behalf. Mr. Pitcher esti-

mated that he is the initial recipient of Notices approximately 40% of the time and that in such cases he takes no action to inform the claimant that he or she has delivered the Notice to the wrong individual. Mr. Pitcher denied having told Mr. Jensen to whom the Notice was to be delivered.

¶ 8 After discovery UTA renewed its motion to dismiss, which the trial court ultimately granted. It found that Ms. Greene failed to strictly or substantially comply with the Immunity Act, that she had been represented by counsel, and that UTA had no legal obligation to help Ms. Green prosecute her case. Ms. Greene appeals from the trial court's dismissal.

## ISSUES RAISED ON APPEAL

¶ 9 Ms. Greene raises two arguments in support of her contention that the trial court erred in dismissing her complaint: (1) that she substantially complied with the Immunity Act, and/or (2) that UTA should be estopped from raising the Immunity Act as a defense due to the actions of its claims adjuster.

## STANDARD OF REVIEW

¶ 10 Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c); *see also, e.g., Kearns–Tribune Corp. v. Salt Lake County Comm'n,* 2001 UT 55, ¶ 7, 28 P.3d 686. We give a trial court's decision to grant summary judgment no deference and review it for correctness. *Kearns–Tribune Corp.,* 2001 UT 55 at ¶ 7, 28 P.3d 686.

## ANALYSIS

### I. UTAH GOVERNMENTAL IMMUNITY ACT

¶ 11 The Utah Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 to – 34 (Supp.2001), establishes the parameters under which parties may bring suit against governmental entities for injuries.[1] Pursu-

---

1. The doctrine of sovereign immunity requires that government must consent before any action is brought against it. *Madsen v. Borthick,* 658

P.2d 627, 629 (Utah 1983). The Immunity Act represents such consent by the Utah Legislature.

ant to the Immunity Act, as a prerequisite to filing suit, a party must file a written notice of claim with the governmental entity. § 63–30–11(2). At issue in this case is compliance with the delivery requirements of the Immunity Act, which state that "the notice of claim shall be ... directed and delivered to ... the president or secretary of the board, when the claim is against a special district." § 63–30–11(3)(b)(ii)(D).

### A. Immunity Act Requires Strict Compliance

■ ¶ 12 Utah law mandates strict compliance with the requirements of the Immunity Act. See, e.g., Rushton v. Salt Lake County, 1999 UT 36, ¶ 19, 977 P.2d 1201. Ms. Greene cites two Utah Court of Appeals cases [2] in an attempt to show that Utah courts have recognized exceptions to this strict compliance rule. These cases, however, arose under previous versions of the Immunity Act and are inapplicable here.

¶ 13 The Immunity Act requires that a Notice, containing specified information, be delivered to specified persons within one year after the claim arises. §§ 63–30–11 to –13 (Supp.2001). The pre–1998 Immunity Act required, among other things, that a Notice be "directed and delivered to the responsible governmental entity," defined as the "agency concerned" or the "governing body of the political subdivision," depending on the nature of the claim. §§ 63–30–11, –12, –13 (1997). In 1998 the Utah Legislature amended the Immunity Act, clarifying exactly to whom Notices must be directed and delivered. See 1998 Utah Laws ch. 164, § 1. Instead of using such general terms, the amended Immunity Act explicitly lists the individuals to whom the notice must be directed and delivered depending on the type of governmental entity involved. See § 63–30–11(3)(b)(ii)(Supp.2001). Because UTA is a special district, the Immunity Act requires that UTA's president or secretary of the board receive the Notice. § 63–30–11(3)(b)(ii)(D)(Supp.2001).

¶ 14 With the 1998 amendment, the legislature has left little open to interpretation and has resolved any potential ambiguities as to whom the Notice must be delivered. This move to clarify the delivery requirements of the Immunity Act reinforces the rule of strict compliance with the statute. Where, as here, the statute is clear, readily available, and easily accessible by counsel, there is no reason to require anything less than strict compliance.

■ ¶ 15 Actual notice of a claim by a governmental entity does not excuse a claimant's strict compliance with the requirements of the Immunity Act. Rushton, 1999 UT 36 at ¶ 19, 977 P.2d 1201. As outlined above, the legislature has explicitly declared how, what, when, and to whom a party must direct and deliver a Notice in order to preserve his or her right to maintain an action against a governmental entity. Compliance with the statute is the determining issue, not actual notice. In the absence of some ambiguity, we will not disturb explicit legislative requirements and read into the statute an actual notice exception.

■ ¶ 16 Compliance with the Immunity Act is necessary to confer subject matter jurisdiction upon a trial court to hear claims against governmental entities. See Thomas v. Lewis, 2001 UT 49, ¶ 13, 26 P.3d 217 (citing Rushton, 1999 UT 36 at ¶ 18, 977 P.2d 1201). Jurisdictional issues are threshold questions and must be addressed before a trial court can consider other arguments. Id. Thus, failure to comply with the Immunity Act requires a trial court to dismiss a complaint.

### B. Ms. Greene's Noncompliance with Immunity Act

■ ¶ 17 Ms. Greene failed to strictly comply with the Immunity Act. She admittedly did not deliver the Notice to the president or secretary of UTA's board. Regardless of the rationale for this failure, or the fact that UTA may have had actual knowledge of her claim, her noncompliance deprived the trial court of subject matter jurisdiction to hear her claim. Even assuming Mr. Pitcher made

---

**2.** Bischel v. Merritt, 907 P.2d 275 (Utah Ct.App. 1995), and Brittain v. State, 882 P.2d 666 (Utah Ct.App.1994).

the statements Ms. Greene alleges he made, his delivery instructions cannot override the requirements set by the legislature.[3] Because Ms. Greene failed to strictly comply with the Immunity Act, the district court lacked subject matter jurisdiction over her claim. We are therefore compelled to affirm the trial court's dismissal of this case.

## II. UTA'S PROVISION OF CLAIMS INFORMATION

¶ 18 In his deposition, Mr. Pitcher estimated that he is the initial recipient of Notices approximately 40% of the time. He admitted that in such cases he feels no obligation to assist a claimant who erroneously delivers a Notice to him and that such Notices are simply left to sit in a file. While this approach may be in keeping with the letter of the law, we have concerns about UTA's policy.

¶ 19 If, in fact, 40% of notices of injury claims against UTA are misdirected as Mr. Pitcher stated, the legislature may wish to reconsider the liability of individuals or entities who actively contribute to such misdirection. UTA is a governmental entity funded in significant part by taxpayers and exists to serve the public. Any intentionally misleading behavior, even if legal, cannot be a public service. While UTA has no duty to make out a plaintiff's case, if 40% of injured parties who choose to pursue additional legal remedies are stopped by delivery deficiencies of which UTA is clearly aware, and to which it may have contributed, UTA would better serve the public by providing accurate and complete claims filing information. Energy and resources used to defeat claims might be better used to prevent them.

## CONCLUSION

¶ 20 As explained above, Utah law requires strict compliance with the explicit instructions outlined in the Immunity Act. Failure to strictly comply with these requirements deprives a court of subject matter jurisdiction and precludes a claimant from bringing suit against a governmental entity. Because Ms. Greene did not strictly comply with the delivery requirements of the Immunity Act, we affirm the trial court's order.

¶ 21 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice DURRANT concur in Justice WILKINS' opinion.

---

**3.** Ms. Greene alleges active misleading by Mr. Pitcher. While we need not, and do not address this contention, we note that the Immunity Act allows governmental employees to be held personally liable for fraudulent or malicious acts or omissions under some circumstances. Utah Code Ann. §§ 63–30–4(3)(b), –4(4) (1997).